UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| YOLANDA FORD | CIVIL ACTION NO. 16-1727 |
|---|---|
| VERSUS | JUDGE ROBERT G. JAMES |
| DOLGENCORP, LLC | MAG. JUDGE KAREN L. HAYES |

### RULING

Before the Court is a Motion for Partial Summary Judgment [Doc. No. 13] filed by Defendant DG Louisiana, LLC. Plaintiff Yolanda Ford opposes the motion. [Doc. No. 15]. For reasons assigned below, the motion is GRANTED IN PART AND DENIED IN PART.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff filed suit in state court on October 21, 2016, alleging that, on or about October 23, 2015, she sustained injuries when she tripped over a step stool and fell in Defendant's Dollar General store ("the alleged fall"). [Doc. No. 1-1]. Plaintiff alleges that Defendant's negligence—leaving the step stool in the aisle unattended—caused injuries to her buttocks, back, left elbow, and left shoulder. *Id.* Defendant removed the action to this Court on December 16, 2016. [Doc. No. 1].

Defendant moved for partial summary judgment on October 13, 2017, arguing that the alleged fall did not cause certain of Plaintiff's alleged injuries because those injuries occurred prior to the fall. [Doc. No. 13]. Defendant argues specifically: (1) that Plaintiff would have undergone her post-incident shoulder surgery regardless of the alleged fall; (2) that the treatment Plaintiff received for back injuries in and following March of 2017 was unrelated to the alleged fall; and (3) that Plaintiff's post-incident treatment with Dr. James Gordon is unrelated to the alleged fall. [Doc.

No. 13-1].

Plaintiff responded to the instant motion on November 6, 2017, claiming that the alleged fall aggravated her pre-existing injuries. [Doc. No. 15]. Plaintiff does not, however, dispute that the treatment she received for back injuries in and following March of 2017 was unrelated to her alleged fall. *Id.* at 7.

Defendant replied to Plaintiff's response on November 20, 2017. [Doc. No. 16].

II. **LAW AND ANALYSIS**

A. **Summary Judgment Standard**

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in

the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[1]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

---

[1] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

### B. Plaintiff's Post-Incident Shoulder Surgery

Defendant argues that Plaintiff's alleged fall did not cause her to undergo left shoulder surgery in June of 2016. [Doc. No. 13-1]. Plaintiff began experiencing recurring left shoulder pain in 2007, when she suffered an on-the-job injury. [Doc. Nos. 13-2; 13-4, pp. 2-3]. She was actively treating her left shoulder pain with Dr. Timothy Spires, an orthopedist, before the alleged fall. *Id.*

"The test for determining the causal relationship between the accident and a subsequent injury is whether the plaintiff provided sufficient proof that more probably than not, the accident caused the subsequent injuries." *Urquhart v. Spencer*, 2017-0069 (La. App. 4 Cir. 7/27/17), 224 So. 3d 1022, 1031 (citing *Frost v. Carter*, 2013-0375, pp. 7-8 (La. App. 4 Cir. 4/2/14), 140 So. 3d 59, 64). "If the evidence establishes that a plaintiff's pre-accident and post-accident conditions are identical in all meaningful respects, the plaintiff has failed to carry his burden of proving causation." *Chavers v. Travis*, 2004-0992 (La. App. 4 Cir. 4/20/05), 902 So. 2d 389, 394–95.

"Where the conclusion [that the defendant caused the plaintiff's damage] is not one within common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn. But on medical matters within common knowledge, no expert testimony is required to permit a conclusion as to causation." *Lasha v. Olin Corp.*, 625 So. 2d 1002, 1005 (La. 1993). "Differentiating between damages caused by an accident and damages caused by the normal progression of a plaintiff's pre-existing condition often presents complex legal and medical issues." *Chavers*, 902 So. 2d at 395.

Here, deciding whether Plaintiff's alleged fall more probably than not caused or contributed to her need for surgery, or whether Plaintiff's pre-existing condition was the sole factor necessitating

4

surgery, presents a complex medical issue that is outside common knowledge.[2] Thus, Plaintiff must present expert testimony that the alleged fall more probably than not caused her to undergo surgery.[3]

Defendant presents expert testimony that the alleged fall did not cause Plaintiff to undergo surgery: Dr. Spires testified in deposition that Plaintiff was likely a candidate for left shoulder surgery before her alleged fall. [Doc. No. 13-3, p. 7]. Dr. Spires also testified explicitly that Plaintiff's alleged fall did not, more probably than not, cause the injuries that necessitated Plaintiff's surgery.[4] According to Defendant, this testimony is "affirmative" evidence that Plaintiff's "surgery is not related to the Dollar General incident." [Doc. No. 13-1, p. 6 (emphasis omitted)].

Plaintiff counters that, while she was a candidate for surgery before the alleged fall, Dr. Spires had not yet recommended surgery. [Doc. No. 15-5, p. 150]. Plaintiff also highlights Dr. Spires' testimony that the alleged fall aggravated her left shoulder injury:

Q. And [the alleged fall] didn't create her left shoulder problem, did it?

A. No.

---

[2] Plaintiff does not argue that the causation issue is within common knowledge.

[3] *See, e.g., Andrews v. Lomar Corp.*, 2017 WL 2634212, at *6 (E.D. La. June 19, 2017) ("[D]etermining whether an artificial hip fracture was caused by the normal progression or wear of an artificial hip or instead caused by a trauma presents complex legal and medical issues."); *Frost*, 140 So. 3d at 67 (opining that a plaintiff must present expert testimony to prevail on a claim that an automobile collision caused the plaintiff to undergo carpel tunnel syndrome surgery); *Bacon v. Ace Am. Ins. Co.*, 2008 WL 5377998, at *4 (M.D. La. Dec. 23, 2008) (holding that whether a car accident caused the motorist to undergo knee replacement surgery was not within common knowledge and that, therefore, expert testimony was necessary); *Sprague v. Fladmo*, 2013 WL 6506258, at *2 (La. App. 1 Cir. 12/10/13) (holding that expert testimony was required because, "[w]hether plaintiff's multiple sclerosis was aggravated by the automobile accident is not within common knowledge . . . .").

[4] Counsel for Defendant asked Dr. Spires specifically, "So you would not relate the need for a surgery on her left shoulder in 2016 to the subject incident at Dollar General on a more probable than not basis. Correct?" [Doc. No. 13-3, p. 7]. Dr. Spires answered, "Correct." *Id.*

5

Q. And I appreciate the medical records that it aggravated her condition?

A. Correct.

Q. And then, after that, is it easy or difficult to separate the underlying condition from the condition that was aggravated?

A. It's difficult.

Q. They all merge together, so to speak, --

A. Yes.

Q. – in the presenting of symptoms or observations? So when you were asked a moment ago, regardless of the fall, she would have had the [surgery], is that excluding the aggravation precipitating that procedure or would she eventually have had that procedure if she had not had the fall, or can you state with –

A. You really can't say with a hundred percent confidence either way.

Q. All right. So when they ask you "more likely than not," that's a – how specific is that? Is that – can you separate –you can't go back and separate, take the aggravation out and follow the underlying condition, and that underlying condition would have resulted in the surgery? Right?

A. Correct.

Q. And as you stated a moment ago, you can't separate the aggravation from the underlying condition because you have a sum total condition after the fall. Right?

A. Correct.

Q. One doctor said that he treats the symptoms, not the accident. You reached a point on the – let's see if I can't phrase it a little better. You reached a point, regardless of what the participation and precipitating factors of the underlying condition and the aggravation condition, you reached a point she needed to go through this procedure?

A. Correct.

Q. Would it also be your testimony more likely than not that the aggravation condition played a part in reaching that conclusion of recommending [the surgery]?

A. That, as you say, everything adds up, and it can be a part of it.

[Doc. No. 15-2, pp. 42-44].[5]

Dr. Spires' testimony is, ultimately, equivocal, and he never opined that the alleged fall more probably than not caused Plaintiff to undergo surgery. Other courts have held that testimony similar to Dr. Spires' testimony is not sufficient to prove that an event more probably than not caused an injury. In *Bacon v. Ace Am. Ins. Co.*, for instance, the court held that a motorist could not recover damages for knee replacement surgery because she needed the surgery prior to the accident and her treating physician—the only medical expert presented—was not able to render an opinion as to whether the accident caused her to undergo surgery. *Bacon*, 2008 WL at *4. Instead, the physician only stated that it was possible and that any opinion he offered was speculative. *Id.*

The court in *Bacon* observed that even though the physician "testified that the accident possibly aggravated [the motorist's] knee situation and caused her pain to increase [], he never testified that the accident is what caused [the motorist] to have to undergo knee replacement surgery." *Id.* at n.5. The court added, "where the evidence indicates that such surgery was warranted prior to the accident, if only the plaintiff had elected to go forward with it at that time, the Court cannot find, based upon the substance of the medical evidence, that plaintiff has proven, more probably than not, that her knee replacement surgery is attributable to the accident at issue." *Id.* at n.6; *see also Andrews,* 2017 WL *7 (finding that an expert's opinion that the alleged incident "could have resulted" in the claimed damage was equivocal); *c.f. Chavers,* 902 So. 2d at 401 (holding that evidence supported causation where the physician testified that "it was more probable than not that the cervical disc fusion was related to the accident.").

---

[5] Plaintiff presents no other expert testimony.

In *Whitaker v. Mullinax*, 628 So. 2d 222, 232 (La. Ct. App. 1993), the court held that an expert's testimony that "it was possible" that the alleged accident "could have caused" the plaintiff's injury did not amount to testimony that the accident more probably than not caused the injury. *See Wells v. Allstate Ins. Co.*, 510 So. 2d 763, 769 (La. Ct. App.) (observing that "a mere possibility" that an accident caused injury is insufficient). Likewise, in *Mack v. Imperial Fire & Cas. Ins. Co.*, 2014-0597 (La. App. 1 Cir. 11/7/14), 167 So. 3d 691, the appellate court upheld the trial court's conclusion that a car passenger's injuries were not caused by the alleged accident, where the passenger had been involved in several previous incidents contributing to the same injuries and where the only testifying expert stated that, while the accident might have aggravated a preexisting condition, there was "no way to adequately answer" or "tell what's going on."

Here, while Dr. Spires testified that the alleged fall aggravated Plaintiff's left shoulder condition, he did not testify that the alleged fall more probably than not caused Plaintiff to undergo surgery. Dr. Spires equivocated when asked if it was "more likely than not that the aggravation condition played a part in" recommending surgery when he stated that "everything adds up, and it can be a part of it." [Doc. No. 15-2, p. 44]. Juxtaposing his equivocal testimony with his unambiguous testimony that Plaintiff's alleged fall *did not*, more probably than not, cause the injuries that necessitated Plaintiff's surgery, it is clear that Plaintiff fails to sustain her burden. As noted, a mere possibility that the alleged fall caused Plaintiff to undergo surgery is insufficient.[6]

---

[6] Plaintiff argues that the Court should presume causation under *Housley v. Cerise*, 579 So. 2d 973 (La. 1991). Under *Housely*, "A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition." *Id.* at 980 (quoting *Lucas v. Ins. Co. of N. Am.*, 342 So. 2d 591 (La. 1977).

8

Accordingly, there is no genuine dispute that the alleged fall did not, more probably than not, cause Plaintiff to undergo left shoulder surgery. Defendant's Motion for Partial Summary Judgment is GRANTED on Plaintiff's claim for damages for her left shoulder surgery in June of 2016, and this claim is DISMISSED WITH PREJUDICE.

**C.     Plaintiff's Back and Pain Treatment in and Following March of 2017**

Defendant argues that Plaintiff's alleged fall did not cause the specific back injury that Dr. Spires treated in and after March of 2017. [Doc. No. 13-1, p. 6]. Dr. Spires examined Plaintiff on March 21, 2017, and Plaintiff reported that the "pain in her back is a little bit lower than normal." [Doc. No. 15-2, p. 75]. Dr. Spires testified in deposition that the pain Plaintiff reported then was different than the pain she previously reported. *Id.* at 33. Dr. Spires acknowledged that he could not "relate" the pain in March of 2017 to the alleged fall on a more probable than not basis. *Id.* at 33-34.

Plaintiff does not controvert Dr. Spires' testimony. [Doc. Nos. 13-2, p. 2; 15-1, p. 1]. Moreover, Plaintiff presents no argument or evidence to dispute Defendant's contention that the alleged fall did not cause the back pain she sought treatment for with Dr. Spires in March of 2017.

Plaintiff also admits that her treatment with Louisiana Pain Care, involving a physician other than Dr. Spires, after March of 2017 "is unrelated to the October 2015 injury." [Doc. No. 15, p. 7]. Given that Defendant moves for summary judgment on "Plaintiff's back complaints and treatment in and following March 2017" and does not limit its motion for summary judgment to Plaintiff's

---

The *Housely* presumption does not apply here. It is undisputed that Plaintiff was not in good health before the alleged fall. For example, Plaintiff does not dispute that, before the alleged fall, she was actively treating with Dr. Spires for recurring left shoulder pain stemming from her on-the-job injury in March of 2007. [Doc. Nos. 13-2, p. 1; 15-1]. Plaintiff also does not dispute that she reported to Dr. Spires that her left shoulder was "already hurting" before the alleged fall. *Id.*

9

treatment with Dr. Spires, Defendant is also entitled to judgment as a matter of law on Plaintiff's claim for damages relating to treatment with Louisiana Pain Care in and after March of 2017.

Accordingly, there is no genuine dispute that the alleged fall did not, more probably than not, cause the injuries that Plaintiff sought treatment for in and following March of 2017 with both Dr. Spires and the Louisiana Pain Clinic. Defendant's Motion for Partial Summary Judgment is GRANTED on Plaintiff's claims for damages relating to these injuries, and these claims are DISMISSED WITH PREJUDICE.

### D. Plaintiff's Treatment with Dr. James Gordon

Defendant argues that Plaintiff's "post-accident medical treatment [for pain] with Dr. James Gordon [a physician with Louisiana Pain Care] is unrelated to the Dollar General incident." [Doc. No. 13-1, p. 7]. Defendant presents Plaintiff's deposition testimony that Dr. Gordon treated her for pain consistently from July of 2012 until September of 2015, the month before the alleged fall. [Doc. No. 13-4, p. 9]. Following the alleged fall, Dr. Gordon did not increase or change her pain medication. *Id.* at 15.

Defendant also presents Plaintiff's testimony that she scheduled her first post-incident appointment with Dr. Gordon before the incident occurred. [Doc. No. 13-4, p. 14]. She testified further:

> Q. Okay. And it looks like you next treated with Dr. Gordon, and that's from – it looks like from November 18th, 2015, to February 8th, 2017. That's like your monthly pain medication visit. Right?
>
> A. Yes, ma'am.
>
> Q. Okay. It looks like when I was looking at his records that you treated monthly for pain meds with Dr. Gordon since July 2012. Correct?

A. Probably, yes, ma'am.

Q. Okay. So when the accident occurred you were still planning to go treat with Dr. Gordon monthly after the accident, correct, anyway?

A. Yes, ma'am.

Q. So even if the accident didn't occur, you would still be treating with Dr. Gordon monthly for your pain meds. Correct?

A. Yes, ma'am.

Q. So you wouldn't relate that treatment with Dr. Gordon to the incident at Dollar General?

A. No, ma'am.

*Id.*

As damning as this testimony is, Plaintiff nevertheless presents other evidence that the alleged fall caused her increased pain. First, as noted, Dr. Spires testified that the alleged fall aggravated her "condition." [Doc. No. 15-2, p. 42]. Spires also testified that Plaintiff had "posterior tenderness" following the alleged fall that was not present before. *Id.* at 25. A physician's assistant, likewise, reported that the alleged fall exacerbated Plaintiff's condition. [Doc. No. 15-2, p. 60]. Most importantly, Plaintiff testified: (1) that her "problems" before the incident were not as bad as they were following the incident; (2) that her left shoulder pain was more intense following the incident; and (3) that she had more pain in her back following the accident. [Doc. No. 15-5, pp. 23, 77-78, 87].

Further, the fact that Plaintiff's pain medication did not change following the alleged fall does not necessarily mean that the incident caused Plaintiff no pain. Nothing in the record demonstrates that the amount of pain medication Plaintiff received prior to the incident was

11

incapable of controlling an increased amount of pain following the incident; otherwise stated, a fact finder could attribute and apportion the medication and treatment Plaintiff received following the incident to both pre and post-incident pain.[7]

Resolving all ambiguities and drawing all permissible inferences in Plaintiff's favor, Plaintiff genuinely disputes that her alleged fall more probably than not caused the increased pain that Dr. Gordon treated prior to March of 2017.[8] Defendant's Motion for Partial Summary Judgment is, to this extent, DENIED.[9]

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment [Doc. No. 13] is GRANTED IN PART AND DENIED IN PART.

Monroe, Louisiana, this 30th day of November, 2017.

*/s/ Robert G. James*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[7] As Plaintiff argues: "[T]he pain clinic treatment was for pain which resulted from the combination of the pre-existing injury and the October 2015 injury. As a result . . . the cost of the treatment for pain during this time period should be allocated between the two causes . . . ." [Doc. No. 15, p. 8].

[8] To recall, Plaintiff admits that her treatment with Dr. Gordon after March of 2017 "is unrelated to the October 2015 injury." [Doc. No. 15, p. 7].

[9] That a fall can cause pain or aggravate a pre-existing injury and lead to increased pain is within common knowledge. Thus, Plaintiff need not present expert testimony to genuinely dispute that her alleged fall more probably than not caused her increased pain. *See Cannet v. Franklynn Pest Control Co.*, 08-56 (La. App. 5 Cir. 4/29/08), 985 So. 2d 270 (finding that causation could be determined via common knowledge, and thus expert medical testimony was not required, where a motorist claimed that a car accident caused her pain and swelling); *Frost*, 140 So. 3d at 67 (opining, "Because the causal link between trauma and increased pain and soreness is often within the realm of determinations not always requiring expert evidence, we cannot say the trial court manifestly erred.")